Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
2473 S. Higley Road
Suite 104-308
Gilbert, AZ 85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael Lucas; and Lorrie Lucas; husband and wife, | No. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| Focus Receivables Management, LLC; and Britannia Smith; | (Jury Trial Demanded) |
| Defendants. | |

**I.  Preliminary Statement**

1. Plaintiffs bring this action for damages based upon Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq*. (hereinafter "FDCPA").  Plaintiffs seek an award of statutory damages, actual damages, court costs and attorney's fees.

## II.   Statutory Structure of FDCPA

2. Congress passed the FDCPA to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. FDCPA § 1692.

3. The FDCPA is designed to protect consumers who have been victimized by unscrupulous debt collectors regardless of whether a valid debt exists. <u>Baker v. G.C. Services Corp.</u>, 677 F.2d 775, 777 (9th Cir. 1982).

4. The FDCPA defines a "consumer" as any natural person obligated or allegedly obligated to pay any debt. FDCPA § 1692a(3).

5. The FDCPA defines "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject or the transaction are primarily for personal, family, or household purposes. FDCPA § 1692a(5).

6. The FDCPA defines "debt collector' as  any person who uses any instrumentality of interstate commerce

or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. FDCPA § 1692a(6).

7. Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damage sustained; statutory damages up to $1,000; attorney's fees as determined by the Court and costs of the action. FDCPA § 1692k.

### III.   JURISDICTION

8. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. §§ 1331. Venue lies in the Phoenix Division of the District of Arizona as Plaintiffs' claims arose from acts of the Defendants perpetrated therein.

### IV.   PARTIES

9. Plaintiffs are individuals residing in Gila County, Arizona.

10. Plaintiffs are allegedly obligated to pay a consumer debt and are "consumers" as that term is defined by FDCPA § 1692a(3).

11. Defendant Focus Receivables Management, LLC ("Focus") is a Georgia limited liability company

- 3 -

      doing business within the state of Arizona as a collection agency.

12. Focus is licensed as a collection agency by the Arizona Department of Financial Institutions, license number 0904307.

13. Focus collects or attempts to collect debts owed or asserted to be owed or due another.

14. In the alternative, Focus collects or attempts to collect debts it has purchased or acquired after default.

15. Focus is a "debt collector" as that term is defined by FDCPA § 1692a(6).

16. At all times relevant herein, Defendant Britannia Smith was employed by and acting on behalf of Focus, and with full authority from Focus, to take the actions complained about herein.

17. In her position at Focus, Britannia collects or attempts to collect debts owed or asserted to be owed or due another.

18. Britannia is a "debt collector" as that term is defined by FDCPA § 1692a(6).

19. Focus is liable for the actions taken by its collectors, supervisors, and managers, including Britannia.

## V.   FACTUAL ALLEGATIONS

20. In or about May 2008, Plaintiffs traded in a leased 2005 Jeep Grand Cherokee to Big Two Mitsubishi in Mesa, Arizona for a new vehicle they had purchased.
21. The Jeep had been leased from Chrysler Financial, and was used for personal, family and household purposes.
22. As part of the transaction, Big Two accepted the Jeep in trade, and agreed to pay off the remaining lease obligation to Chrysler Financial.
23. On May 31, 2008, Big Two paid Chrysler Financial $21,502.03 as full satisfaction of the payoff owed on Plaintiffs' lease.
24. Plaintiffs never received any communication from Chrysler Financial indicating that any amount remained outstanding on their lease.
25. On November 10, 2010, Focus called Plaintiffs' home phone and Plaintiff Michael Lucas answered the call.
26. The Focus collector asked Michael to verify his social security number, which he refused to do, and, thinking is was a scam he hung up.
27. Focus called back a minute later and again asked Michael to verify his social security number, which he refused to do and hung up.
28. A short time later, Focus called Plaintiff Lorrie

- 5 -

1      Lucas at work.
2  29. Lorrie works as a First Grade teacher for the Miami
3      Unified School District.
4  30. While at work on November 10, 2010, Lorrie received
5      a message from the school's office that Britannia
6      from Focus Receivables Management had called, and
7      that it was urgent that she return the call.
8  31. The written message Lorrie received contained the
9      phone number 1-866-664-2512 x 2315, the names of
10     Britannia and Focus Receivables Management, a
11     reference #14019368, and a note to please call.
12 32. When her preparation time came that day, and the
13     children were out of the classroom, Lorrie returned
14     the call to Focus and asked for Britannia.
15 33. Britannia asked Lorrie to provide her personal
16     identification information, which Lorrie refused to
17     do because she had no idea what the call was
18     concerning, or whether it was just someone trying to
19     get her identification information.
20 34. Britannia then told Lorrie that the call was
21     concerning a Jeep that she had traded in and that
22     there was a balance owing on the account.
23 35. Lorrie became very upset that a collection agency
24     was calling her at work, and told Britannia that she
25     could not receive these types of personal calls at

- 6 -

1  work, and asked that she not call again.
2  36. Britannia then told Lorrie that she owed twenty-two
3  thousand dollars on the Jeep and that she needed to
4  make arrangements to pay.
5  37. Again Lorrie told Britannia not to call her at work,
6  and also told her that she would not give Britannia
7  any information without first receiving proof from
8  Focus that she owed the debt.
9  38. Michael works at an APS power plant in Casa Grande,
10  Arizona.
11  39. In early December 2010, Focus called and left a
12  message for Michael at work.
13  40. Michael's manager told him he had received a call,
14  and then handed him a written message which
15  contained the names of Britannia and Focus
16  Receivables, the phone number 1-866-664-2512
17  extension 2369, and the file number of 14019368.
18  41. Over the following weeks, Plaintiffs received eight
19  to ten calls from Focus attempting to collect the
20  alleged debt owed to Chrysler Financial.
21  42. On or about December 27, 2010, Plaintiffs received
22  a call from Malik Hamid, Britannia's supervisor at
23  Focus, who called about the collection of the
24  account.
25  43. At the time, Plaintiffs were shopping in Mesa,

-7-

Arizona.

44. During this call, Hamid told Michael to have someone from Big Two call him.

45. Since Plaintiffs were in Mesa, they decided to immediately go to Big Two and try to clear this matter up.

46. Terry at Big Two said he would get the records and that someone from Big Two would contact Focus about clearing up the account.

47. Upon information and belief, Brian Muff from Big Two called Focus on or about December 28, 2010 and spoke with Malik.

48. At the time, Big Two had already faxed a copy of the cancelled check written to Chrysler Financial to Focus.

49. When Brian spoke with Malik, Brian told him to quit harassing Plaintiffs, to which Malik stated that Focus was not harassing Plaintiffs and that the calls would not stop.

50. On about December 30, 2010, Michael called Chrysler Financial to find out why it was continuing to claim that Plaintiffs owed it money on the Jeep lease.

51. The Chrysler representative routed Michael's call to Focus where he spoke with Britannia again.

52. Britannia then transferred Michael to Britannia's

1 supervisor, Malik Hamid, who then transferred Michael to Ben Ard, a manager for Focus.

53. Michael tried to explained to each of these individuals, that they needed to check with DCFT Trust, the name of the lessor on their Jeep title, or Chrysler Financial and verify that the account had in fact been paid in full.

54. Michael also explained to each collector that while Focus already had a copy of the title of the Jeep sent to it by Big Two Mitsubishi, he had a front and back copy of the title obtained directly from the Department of Motor Vehicles, which he was willing to forward to them, which clearly showed that DCFT Trust had released the lien in May 2008.

55. Michael also explained to each Focus representative that he had a letter from Chrysler Financial from June 2008, reflecting that there was no balance owed on the lease.

56. Finally, Michael explained to each collector that Big Two had already sent Focus a copy of the cancelled check that it had sent to Chrysler Financial on May 31, 2008 to pay off the lease.

57. After explaining these things to Focus' manager Ben Ard, Michael asked Ard "What do I need to get you to release this account?"

58. Ard responded stating that a copy of the check and / or a copy of the title was not good enough.
59. Frustrated, Michael then asked Ard, "Then what would it take?"
60. Ard stated that "You can just send the money and then you can go after the dealer or Chrysler."
61. On January 5, 2011, Britannia called Plaintiff and asked whether he had called and left a message to set up a payment arrangement.
62. Michael had not called Focus to set up payments, and Britannia' statement was false.
63. As a result of Defendants' actions, Plaintiffs have suffered actual damages.
64. At no time have Plaintiffs' received any written communication from Focus concerning the Chrysler account.
65. Defendants' actions as set forth herein were intentional, willful, and in gross or reckless disregard of Plaintiffs' rights and part of its persistent and routine practice of debt collection.
66. In the alternative, Defendants' actions were negligent.

### VI. Causes of Action

#### a. Fair Debt Collection Practices Act

67. Plaintiffs repeat, reallege, and incorporate by

1 | reference the foregoing paragraphs.
2 | 68. Defendants' violations of the FDCPA include, but are
3 | not necessarily limited to, 15 U.S.C. §§ 1692d,
4 | 1692d(6), 1692e, 1692e(2)(A), 1692e(5), 1692e(8),
5 | 1692e(10), 1692e(11), 1692f(1), and 1692g.

## VII.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Defendants for:

a) Statutory damages of $1,000 for each Defendant pursuant to FDCPA § 1692k;

b) Actual damages in amount to be determined at trial;

c) Costs and reasonable attorney's fees pursuant to §1692k; and

d) Such other relief as may be just and proper.

DATED   January 24, 2011  .

        s/ Floyd W. Bybee
Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
2473 S. Higley Road
Suite 104-308
Gilbert, AZ 85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

- 11 -